**F I L E D**

PUBLISH

**January 18, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD ROBEY, on behalf of
himself and others similarly situated,

　　　　Plaintiff-Appellant,

v.

No. 04-5163

SHAPIRO, MARIANOS & CEJDA,
L.L.C.; THERESA MARIANOS;
KIRK J. CEJDA; GERALD SHAPIRO;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

　　　　Defendants-Appellees.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 02-CV-584-P)**

Submitted on the briefs:

Lawrence A. G. Johnson, Tulsa, Oklahoma, for Plaintiff-Appellant.

Victor E. Morgan, Gerald L. Jackson, Crowe & Dunlevy, Tulsa, Oklahoma,
Richard C. Ford, Crowe & Dunlevy, Oklahoma City, Oklahoma, Melvin R.
McVay, Jr., Heather L. Hintz, Phillips, McFall, McCaffrey, McVay & Murrah,
P.C., Oklahoma City, Oklahoma, for Defendants-Appellees.

Before **KELLY**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

This appeal involves claims brought under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692o.  Plaintiff Richard Robey is appealing the order entered by the district court dismissing his first amended complaint under FED. R. CIV. P. 12(b)(6).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[*]

## I.

### A.  Background.

This case arises out of a state-court foreclosure action filed by defendant Mortgage Electronic Registration Systems, Inc. (MERS) against Robey in Tulsa County, Oklahoma.  MERS was represented in the foreclosure action by defendant Shapiro, Marianos, & Cejda, L.L.C. (the Lawyer Defendants).[1]  In the foreclosure petition, the Lawyer Defendants requested that MERS be awarded

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

[1]     As used herein, the term "the Lawyer Defendants" includes the named individual lawyers from the Shapiro firm, defendants Theresa Marianos, Kirk J. Cejda, and Gerald Shapiro.

both a money judgment and a judgment of foreclosure, and they also requested additional relief, including that MERS be awarded "a reasonable attorney's fee." Aple. App. at 50. MERS ultimately dismissed the foreclosure action without prejudice, however, and MERS was not awarded any attorney's fees. *Id.* at 152-55.

Prior to the dismissal of the foreclosure action, Robey filed this action against MERS and the Lawyer Defendants, alleging they violated the FDCPA when they sought to recover a "reasonable attorney's fee" in the foreclosure action. According to Robey, the request for a "reasonable attorney's fee" was an unfair debt collection practice under 15 U.S.C. § 1692f(1) because: (1) MERS and the Lawyer Defendants had agreed that the Lawyer Defendants would handle the foreclosure action for a flat fee; and (2) the flat-fee agreement was never disclosed to the state court. Robey also asserted pendent state-law claims against defendants. The state-law claims included a claim that MERS violated Oklahoma law by failing to reveal that it was not the holder of the promissory note being sued on in the foreclosure action.

**B. District Court's Dismissal Order.**

Pursuant to FED. R. CIV. P. 12(b)(1) and (b)(6), defendants filed motions to dismiss Robey's first amended complaint, arguing that: (1) Robey lacked standing to assert his claims because he had not suffered an injury in fact in the foreclosure

action; and (2) Robey failed to state a claim upon which relief could be granted related to the foreclosure action because an award of attorney's fees was authorized by Oklahoma law and the terms of Robey's mortgage.

In ruling on defendants' motions to dismiss, the district court addressed only defendants' second argument. The court began its analysis on that point by noting the following:

> Under the FDCPA, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "Unfair or unconscionable" is defined to include "[t]he collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

*Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 340 F. Supp. 2d 1062, 1064 (N.D. Okla. 2004). Applying these provisions, the court rejected Robey's claim that the request in the foreclosure petition for a "reasonable attorney's fee" was an unfair debt collection practice under § 1692f(1), and therefore concluded that Robey had failed to state a claim under the FDCPA. As the court explained:

> To put it simply, Plaintiff's position is unsupported. Oklahoma law permits the recovery of a reasonable attorney's fee in a mortgage foreclosure action as the prevailing party. Okla. Stat. tit. 42 § 176. Plaintiff's mortgage at the time the foreclosure was filed and the demand letter was sent provided for the recovery of "reasonable attorney's fees customarily charged in the area." . . .
> Plaintiff's citation to various statutes and unrelated authorities is novel but misguided. Plaintiff would have this Court attempt to connect several seemingly unrelated state statutes to arrive at a conclusion that Shapiro's and MERS's practices are prohibited by a

federal law represented in the FDCPA. . . . Plaintiff also cites to various other inapplicable cases and statutes pertaining to attorney ethics in an attempt to persuade this Court to adopt a heretofore unrecognized position under the FDCPA. This Court declines to do so. The fees sought in the prayer of the foreclosure action [are] authorized by statute and the agreement between the mortgagee and mortgagor. Plaintiff's attempt to transform Shapiro's and MERS's actions into something sinister is lacking. At best, the failure to disclose the flat fee arrangement is a matter best left to the determination of the court presiding over the foreclosure. The practice, however, does not violate the FDCPA.

*Id.* at 1064-65.

With regard to Robey's claim against MERS for failing to reveal it was not the holder of the promissory note, the district court noted that the claim was "only referenced in the introduction of the First Amended Complaint and Count II of the Pendent State Claims section of the pleading." *Id.* at 1065. The court thus "interpret[ed] the claim to be only based in state law and not the FDCPA." *Id.* Having determined that "the sole claim based in federal law [had to be] dismissed," *id.*, the court then declined to exercise supplemental jurisdiction over Robey's state-law claims, *id.* (citing 28 U.S.C. § 1367(c)(3)).

## II.

### A. Standing Issue.

"Article III, Section 2 of the United States Constitution extends the judicial power only to 'Cases' or 'Controversies.' A dispute is an Article III 'Case' or 'Controversy' only if the plaintiff can establish what is known as 'constitutional

standing.'" *Carolina Cas. Ins. Co. v. Pinnacol Assurance*, 425 F.3d 921, 926 (10th Cir. 2005). Constitutional standing exists if the plaintiff:

> show[s] [that] (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (quotation omitted). Moreover, Congress may expand the range or scope of injuries that are cognizable for purposes of Article III standing by enacting statutes which create legal rights. Thus, as the Supreme Court has explained, "Congress may enact statutes creating legal rights, the invasion of which creates [constitutional] standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) (stating that "[t]he . . . injury required by Art. III may exist solely by virtue of statutes creating legal rights," and that this "principle involve[s] Congress' elevating to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law") (quotations omitted); *Akins v. Fed. Election Comm'n*, 101 F.3d 731, 736 (D.C. Cir. 1996) (*en banc*) ("Although Congress may not 'create' an Article III injury that the federal judiciary would not recognize, . . . Congress can create a legal right (and, typically, a cause of action to protect that right) the interference

with which will create an Article III injury." (citations omitted)), *vacated on other grounds*, 524 U.S. 11 (1998).

Congress "may also . . . place additional restrictions on who can sue, imposing requirements of 'statutory standing.'" *Carolina Cas. Ins. Co.*, 425 F.3d at 926 (quotation omitted). As we recently explained, it is important to distinguish between constitutional standing and statutory standing:

> Because constitutional standing is necessary to the court's jurisdiction, as a general rule it must be addressed before proceeding to the merits. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 96-97, 97 n.2 . . . (1998) . . . .
> On the other hand, statutory standing need not be addressed if the court determines that the plaintiff loses on the merits anyway.

*Id.*

Because Robey was not actually ordered to pay any attorney's fees in the state-court foreclosure action, defendants argued in district court that Robey had not suffered any injury and therefore lacked standing to pursue his claims under the FDCPA. In its order dismissing Robey's claims under Rule 12(b)(6), the district court acknowledged the standing issue but chose not to address it, explaining that "[a]lthough Plaintiff may well lack standing to bring this action . . . , this Court chooses not to address this issue, given the dismissal of the FDCPA claim." *Robey*, 340 F. Supp. 2d at 1065. In light of the Supreme Court's decision in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998), however, the district court should have decided the standing issue first, at least as

-7-

it pertains to Robey's constitutional standing for purposes of Article III. *See Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1309-10 (10th Cir. 1998) (stating that "*Steel* requires that a federal court satisfy itself of subject matter jurisdiction before proceeding to the merits of a claim–even when the question of the merits is the easier one and is substantively resolvable against the claim over which jurisdiction is in doubt"), *overruled on other grounds by Styskal v. Weld County Bd. of Comm'rs*, 365 F.3d 855, 858 (10th Cir. 2004). We therefore address the constitutional standing issue before proceeding to the merits of Robey's claims. *See San Juan County, Utah v. United States*, 420 F.3d 1197, 1203 (10th Cir. 2005) ("Because standing implicates the district court's subject matter jurisdiction, we must address this issue before addressing the merits of [an] appeal."). In so doing, we recognize we are dealing with legal rights created by Congress under the FDCPA. Hence, the "injury in fact" analysis for purposes of Article III is directly linked to the question of whether Robey has suffered a cognizable statutory injury under the FDCPA.

We determine that Robey has suffered an injury in fact under the FDCPA and therefore has standing to pursue his challenge against defendants' request for an award of attorney's fees in the foreclosure action. As the Second Circuit explained in a case in which the plaintiff was alleging that a creditor violated the FDCPA by making an unlawful request for attorney's fees:

Defendants maintain that plaintiff lacks standing to pursue this claim because it is undisputed that plaintiff never paid *any* attorneys' fees to either UC & S or NAN, as the underlying lawsuit initiated by UC & S was settled with different counsel. Accordingly, defendants argue that plaintiff did not suffer any identifiable injury. The FDCPA provides for liability for attempting to collect an unlawful debt, however, and permits the recovery of statutory damages up to $1,000 in the absence of actual damages. Thus, courts have held that actual damages are not required for standing under the FDCPA. *See, e.g, Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("[T]he plaintiff who admittedly owes a legitimate debt has standing to sue if the Act is violated by an unprincipled debt collector."); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (same); *cf. Gambardella v. G. Fox & Co.*, 716 F.2d 104, 108 n.4 (2d Cir. 1983) (noting that "[i]t is well settled . . . that proof of actual deception or damages is unnecessary to a recovery of statutory damages" under the Truth in Lending Act). Accordingly, we join those courts and hold that the fact that plaintiff did not ever pay any attorneys' fees to NAN does not necessarily suggest that he was not injured for purposes of his FDCPA claim, if he can show that UC & S *attempted* to collect money in violation of the FDCPA.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003); *see also* 15 U.S.C. § 1692f (providing that "[a] debt collector may not use unfair or unconscionable means to collect or *attempt to collect* any debt") (emphasis added); *Johnson v. Riddle*, 305 F.3d 1107, 1121 (10th Cir. 2002) (holding "that [defendant] violated the FDCPA because he attempted to collect an amount not permitted by [Utah] law," without addressing standing).

Because Robey is claiming that defendants violated the FDCPA by attempting to collect attorney's fees that were not permitted under Oklahoma law, the Second Circuit's reasoning in *Miller* and our decision in *Johnson* apply with

equal force to this case.  Accordingly, Robey has been injured under the terms of the FDCPA and can seek legal redress of his claims under that act.  He has thus satisfied the "injury in fact" and other requirements of constitutional standing.

**B.  Rule 12(b)(6) Dismissal.**

We review a Rule 12(b)(6) dismissal *de novo*, accepting all well-pleaded facts as true and in the light most favorable to the nonmoving party.  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* (quotation omitted).

Having conducted the required *de novo* review, we affirm the dismissal of Robey's claims under the FDCPA for substantially the same reasons set forth in the district court's opinion.  *See Robey*, 340 F. Supp. 2d at 1064-65.  With regard to the dismissal of his state-law claims, Robey has not argued in this appeal that the district court abused its discretion in refusing to exercise supplemental jurisdiction over the state-law claims.  *See Gold*, 159 F.3d at 1310 ("[W]e review the district court's decision to decline supplemental jurisdiction for abuse of discretion only.").  Robey has therefore waived his right to challenge the dismissal of the state-law claims.  *See Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 n.10 (10th Cir. 2004) (holding that appellant waived its right to

appeal rulings of the district court that it did not substantively address in its opening brief).

Finally, while Robey contends he has stated a claim against MERS under the FDCPA for failing to reveal that it was not the holder of the promissory note, *see* Aplt. Br. at 6-7, 8, 21, Robey did not make this federal-law argument in the proceedings before the district court. "Generally, an appellate court will not consider an issue raised for the first time on appeal," *Tele-Commc'ns, Inc. v. C.I.R.*, 104 F.3d 1229, 1232 (10th Cir. 1997), and Robey has failed to offer any reason why we should depart from the general rule here.

### C. Class-Action Allegations.

In addition to asserting claims under the FDCPA on his own behalf, Robey also sought to certify a class action under FED. R. CIV. P. 23. Because we conclude the district court correctly determined that Robey failed to state a claim on his own behalf under the FDCPA, we also conclude that Robey's class-action allegations were properly dismissed. *See Sample v. Aldi Inc.*, 61 F.3d 544, 551-52 (7th Cir. 1995) (class-action allegations properly dismissed where district court granted summary judgment on plaintiff's individual claims), *disapproved on other grounds*, *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996).

We **AFFIRM** the judgment of the district court.  We also **GRANT**

appellees' joint motion to strike pages 24-59 of Robey's appendix.